**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CR-20271-DSL**

**UNITED STATES OF AMERICA**

**v.**

**BRETT BLACKMAN,**
**GARY COX, and**
**GREGORY SCHRECK,**

**Defendants**.

_____/

**THE GOVERNMENT'S OMNIBUS MOTIONS _IN LIMINE_**

The United States of America, through undersigned counsel, hereby moves _in limine_ for rulings on several evidentiary issues that are likely to arise during the trial of Defendants Brett Blackman, Gary Cox, and Gregory Schreck.

**PROCEDURAL AND FACTUAL BACKGROUND**

On June 27, 2023, a federal grand jury returned a three-count Indictment against the Defendants.  Defendants Brett Blackman and Gregory Schreck were arraigned on July 28, 2023 [D.E. 17, 18] and Defendant Gary Cox was arraigned on August 9, 2023 [D.E. 22]. On February 20, 2024, a federal grand jury returned a six-count Superseding Indictment against the Defendants [D.E. 76].  Count 1 in the Superseding Indictment charges the same overarching health care fraud and wire fraud conspiracy as the original Indictment. Counts 2-4 in the Superseding Indictment allege substantive health care fraud counts. [_Id_. at 14-15.]  Count 5 in the Superseding Indictment charges a kickback conspiracy similar to that charged in the original indictment.  [_Id_. at 16-17.] Defendants are scheduled to begin trial on May 5, 2025.

1

The allegations in the Superseding Indictment against the Defendants involve a complex scheme relating to telemedicine, orthotic braces, and pain creams that involved claims for hundreds of thousands of patients.  [D.E. 76.]  The case involves an internet-based platform called DMERx that was operated by the Defendants and used by dozens of purported telemedicine companies, telemarketing companies, and durable medical equipment (DME) suppliers.  The Superseding Indictment alleges that the Defendants programmed the platform to generate false and fraudulent doctors' orders for orthotic braces and prescriptions for creams used to bill Medicare and other insurers that the platform's users bought and sold in exchange for kickbacks and bribes and used to bill Medicare and other insurers.

## LEGAL STANDARD

The Government's motions are based on the familiar principles of evidence set forth in the Federal Rules of Evidence.  Evidence is admissible only if relevant in that it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401 and 402; *United States v. Glasser*, 773 F.2d 1553, 1559 n.4 (11th Cir. 1985).  Relevant evidence may be excluded only if its probative value is "substantially outweighed by a danger of" unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

## EVIDENTIARY ISSUES LIKELY TO ARISE AT TRIAL

### I.   EVIDENCE OR ARGUMENT BLAMING THE VICTIMS FOR PAYING CLAIMS SUBMITTED BY DEFENDANTS OR FAILING TO DISCOVER THE FRAUD SHOULD BE EXCLUDED.

Defendants should be precluded from arguing, offering evidence, or eliciting on direct or cross-examination any "blame the victim" defenses that because Medicare did not somehow

identify Defendants' fraud and paid the claims submitted based on orders and prescriptions generated by the DMERx platform, Defendants could not have defrauded Medicare or known that their claims were fraudulent. Similarly, the Government moves *in limine* to prevent Defendants from arguing that Medicare or other payors should have discovered the fraud scheme or that they somehow approved Defendants' conduct by issuing provider enrollment numbers, paying claims, or failing to identify the fraud through audits. These "blame the victim" defenses to a health care fraud case are irrelevant, improperly blame the victims of the fraud, and would mislead the jury. The Eleventh Circuit, and its sister circuits, have thus expressly forbidden them.

Evidence of insurers' conduct has nothing to do with Defendants' guilt or innocence as a matter of law, and therefore fails to meet the standard for relevance. It is well established that the negligence of the victim in failing to discover a fraudulent scheme is not a defense to a defendant's criminal misconduct. "A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence." *United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009).[1] This concept holds true throughout criminal law. Bank robbers are not absolved of their crimes if the bank security systems are deficient; home invaders are not absolved if homeowners leave a key under the mat; and individuals who perpetrate Ponzi schemes are not innocent if their clients include sophisticated Wall Street brokers. There is no contributory negligence in criminal law.

---

[1] *See also United States v. Coyle*, 63 F.3d 1239, 1244 (3rd Cir. 1995) (negligence of victim in failing to discover fraud scheme is not a defense to criminal conduct); *United States v. Thomas*, 377 F.3d 232, 242-44 (2d Cir. 2004) (same) (collecting cases); *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) ("a victim's lack of sophistication is not relevant to the intent element of mail or wire fraud.") (collecting cases).

Defendants cannot point their finger at insurers to excuse their own conduct. The Eleventh Circuit made this clear in *Svete* when it analyzed the section of the mail fraud statute that reads "any scheme or artifice to defraud." 556 F.3d at 1161-62. This same phrase is part of the health care fraud statute, 18 U.S.C. § 1347, which is modeled after the mail, bank, and wire fraud statutes. *See United States v. Mermelstein*, 487 F. Supp. 2d 242, 254 n.2 (E.D.N.Y. 2007) ("The health care fraud statute is modeled after the bank fraud statute, 18 U.S.C. § 1344, and the bank fraud statute as modeled after the federal mail and wire fraud statutes, §§ 1341 and 1343."). Relying on this history and the Supreme Court's interpretation of "any scheme or artifice to defraud," the Eleventh Circuit, sitting *en banc*, explained:

> Because the focus of [a fraud] statute, like any other criminal statute, is on the violator. … a defendant who intends to deceive the ignorant or gullible by preying on their infirmities is no less guilty. . . . whatever role, if any, a victim's negligence plays as a bar to civil recovery, it makes little sense as a defense under a criminal statute that embraces "<u>any</u> scheme or artifice to defraud." A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence.

*Id.* at 1165 (emphasis in original) (internal citations omitted). Following the Eleventh Circuit in *Svete*, and various other Circuit courts,[2] this Court should exclude any discussion of or presentation of evidence on the insurers' purported negligence. Even if Medicare was at fault— which it was not—such evidence would still be irrelevant, improper, and no defense to the charged scheme.

---

[2] *See Thomas*, 377 F.3d at 243-44 (rejecting argument that victim's foolishness vitiated defendant's fraudulent intent); *United States v. Davis*, 226 F.3d 346, 358-59 (5th Cir. 2000) (affirming jury instruction that "the naivety, carelessness, negligence, or stupidity of a victim does not excuse criminal conduct, if any, on the part of a defendant"); *Amico*, 486 F.3d at 780; *see also United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000) ("If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright. These are criminal statutes, not tort concepts." (quoting *United States v. Brien*, 617 F.2d 299, 311 (1st Cir. 1980))).

In addition to being irrelevant, evidence concerning the insurers' conduct would be prejudicial under Rule 403.  Allowing Defendants to argue that Medicare was negligent in paying the claims at issue, or in failing to discover the fraud sooner, and that this somehow excuses Defendants' criminal conduct, would mislead the jury.  Allowing evidence about such conduct to come before the jury could create the erroneous impression that to find Defendants guilty, the jury must find that Medicare could not have discovered Defendants' misconduct.  Because that is not necessary under the law, Defendants should not be allowed to create such improper inferences.  In addition, such evidence would be misleading, because if the jurors heard lengthy arguments regarding Medicare's actions, they might neglect the more important evidence of what Defendants did, and improperly focus on issues other than the charged fraud scheme.

Thus, the Court should preclude Defendants from introducing any such "blame the victim" defense.  Defendants should not be permitted to argue that anyone *should* or *could* have discovered their fraud and denied their claims; or that Medicare did discover their fraud and somehow blessed it by issuing a provider enrollment number or paying claims.  Likewise, Defendants should not be permitted to assert that insurers' payment of fraudulent claims led Defendants to believe that their conduct was somehow legitimate or lawful.

II.   **EVIDENCE OF SPECIFIC ACTS OF "GOOD CONDUCT" SHOULD BE EXCLUDED AS IRRELEVANT AND AS IMPROPER CHARACTER EVIDENCE.**

The Government anticipates that Defendants may attempt to introduce irrelevant evidence of specific acts of good conduct to argue that they did not intend to defraud.  Similarly, the Government expects that Defendants may attempt to introduce irrelevant evidence that braces provided through Defendants' portal to beneficiaries were actually used, needed, or otherwise helped the beneficiaries.  It is well-established that, in fraud cases, evidence that a criminal defendant did not commit fraud in all instances is irrelevant.  The Eleventh Circuit has repeatedly held that "evidence of good conduct is not admissible to negate criminal intent." *United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991); *see also United States v. Moreira*, 605 F. App'x 852, 859 (11th Cir. 2015) (per curiam); *United States v. Prine*, 569 F. App'x 859, 860 (11th Cir. 2014) (per curiam); *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008).  Thus, Defendants should be precluded from arguing or introducing evidence of: (i) isolated instances of purportedly legitimate practices by practitioners and providers using the DMERx portal, and (ii) evidence that some patients may have liked or benefited from the braces received from those entities.

For example, in *Moreira*, the jury convicted the defendant of various Medicare fraud and money laundering violations relating to a kickback scheme for a home health agency. 605 F. App'x at 854-57. The defendant sought to introduce evidence of her compliance with Medicare rules and regulations in support of her defense that she did not intend to defraud Medicare. *Id.* at 859. Under a plain-error standard, the Eleventh Circuit upheld the exclusion of such evidence as irrelevant—and thus inadmissible to negate criminal intent—because "[t]he Government did not charge and did not argue that there was no legitimate business conducted at the defendant's

6

clinic." *Id.* The Court found that "evidence that some of the claims filed by [the clinic] may have been for services legitimately provided to eligible patients without the payment of kickbacks was irrelevant." *Id.*

Along these same lines, in *United States v. Hung Thien Ly*, 543 F. App'x 944 (11th Cir. 2013), which involved a doctor who was convicted for improperly dispensing controlled substances without a legitimate medical purpose, the Eleventh Circuit affirmed the district court's exclusion of evidence of the doctor's good conduct.  Specifically, the doctor in that case claimed that the district court erred by excluding evidence that he discharged or refused to treat certain patients who violated or were suspected of violating the doctor's protocols, which the doctor claimed demonstrated lack of criminal intent. *Id.* at 946.  The Eleventh Circuit disagreed, holding that such evidence was "not probative of [the doctor's] intent with respect to the patients who received the drugs covered by the indictment." *Id.*  The Court also emphasized that the introduction of evidence regarding patients who were not the subjects of the indictment "would have posed a significant risk of confusion of the issues." *Id.*

Applying these principles to the present case, any proof that Defendants' portal purportedly led to legitimate services being provided to some patients must be excluded.  The same applies to any evidence that Defendants submitted or caused the submission of claims for patients who actually needed, benefitted from, or otherwise liked the braces provided.

The character of each Defendant is not an essential element of the charges.  *See* Fed. R. Evid. 405(b). To be sure, the Government will argue that Defendants' fraudulent conduct was widespread, but any attempts by Defendants to rely on isolated instances of purportedly legitimate claims or on patients who may have needed or benefitted from the services provided should be precluded under Rules 404 and 405.

### III.   EVIDENCE OR ARGUMENT REGARDING THE GOVERNMENT'S DECISION WHETHER OR NOT TO CHARGE ANY INDIVIDUAL SHOULD BE EXCLUDED AS IRRELEVANT.

Evidence regarding whether an uncharged person has been or will be charged with a crime is not relevant to a defendant's guilt or innocence.  Therefore, a defendant cannot offer testimony or argument comparing his or her conduct with that of other uncharged persons in an effort to negate the charges.  *See United States v. Chugay*, 2022 WL 1782583, *2 (S.D. Fla. June 1, 2022) (granting Government's motion *in limine* to preclude argument that defendant "is not liable because some other person is also liable for the same crime but was not charged"); *accord United States v. Thompson*, 253 F.3d 700 (5th Cir. 2001) (upholding granting government's motion *in limine* to prevent defense counsel from comparing defendant's conduct with that of other uncharged or immunized witnesses).  Any statements to that effect serve only to prejudice the jury and offer no probative value.  Fed. R. Evid. 403.

Based on these principles, the Court should exclude testimony or argument in this trial regarding the fact that the Government has not charged individuals who played roles at DMERx, including at least three specific individuals the Government has identified for Defendants.  Defendants should be precluded from commenting on or eliciting evidence that the Government has not charged anyone, including these individuals, for example, in cross-examination of uncharged Government witnesses such as former employees.  Whether these individuals were charged for any crime is irrelevant to any Defendant's guilt.

### IV.   EVIDENCE OR ARGUMENT REGARDING THE GOVERNMENT'S DECISION NOT TO CALL AN INDIVIDUAL TO TESTIFY SHOULD BE EXCLUDED AS IRRELEVANT.

The Government seeks a ruling *in limine* precluding Defendants from commenting on or asking the jury to draw any negative inference from the Government's decision not to call a

particular individual to testify.  "If a witness is 'equally available' to both the Government and a defendant, then no 'unfavorable inference against the government could be drawn from its failure to call [the] witness.'"  *United States v. Smith*, 2019 WL 4281908, *2 (M.D. Ala. Sept. 10, 2019) (citing *Luttrell v. United States*, 320 F.2d 462, 465 (5th Cir. 1963)); *see United States v. Richard*, 678 F. App'x 927, 941 (11th Cir. Feb. 3, 2017) ("[T]he long-standing rule in this circuit is that any inference from a party's failure to call a certain witness equally available to both parties is impermissible.") (quoting *United States v. Chapman*, 435 F.2d 1245, 1247 (5th Cir. 1970)). Here, the Government provided a list of its anticipated cooperating witnesses on August 23, 2024, and the investigation of this matter involved numerous other witness interviews, reports of which have been provided to Defendants.  The Government does not intend to call every conceivable witness, and Defendants have the power to subpoena their own witnesses. Thus, these witnesses are all available to Defendants and they should not be permitted to ask the jury to draw any conclusions from the absence of a witness.

## V.   DEFENDANTS SHOULD BE PRECLUDED FROM MAKING ANY "ADVICE OF COUNSEL/GOOD FAITH RELIANCE" DEFENSES UNLESS THEY PROVIDE PROPER NOTICE AND DISCOVERY.

The Government has asked for notice and discovery[3] with respect to any advice of counsel defense in each of its discovery letters dating back to August 4, 2023.  On January 25, 2025, the Government again asked defense counsel whether they intend to pursue such a defense. Counsel responded that they could not make their determination at that time and that, based on the fact that privilege has been waived over certain relevant material in the Government's possession, they did not believe it was necessary to provide notice of any defense at this time.

It is black-letter law in the Eleventh Circuit that "[i]n order to qualify for an instruction on good faith reliance on the advice of counsel, a defendant must show that: (1) he fully disclosed to his attorney all material facts that are relevant to the advice for which he consulted the attorney; and (2) thereafter, he relied in good faith on advice given by his attorney." *United States v. Hill*, 643 F.3d 807, 851 (11th Cir. 2011) (*citing United States v. Miles*, 290 F.3d 1341, 1354 (11th Cir. 2002)); *United States v. Condon*, 132 F.3d 653, 656 (11th Cir. 1998); *United States v. Johnson*, 730 F.2d 683, 686 (11th Cir. 1984)). A district court may properly decline to give an advice of counsel instruction "if it lacks evidentiary support or is based upon mere suspicion or speculation." *United States v. Romero*, 542 F. App'x 879, 882 (11th Cir. 2013) (*citing Condon*, 132 F.3d at 656).  In light of this basic concept, an advice-of-counsel defense can be precluded if a defendant has not noticed it or provided any evidentiary support for it. While the Government is in possession of some materials that may be relevant to the assertion of an advice of counsel defense, Defendants should be precluded from raising an advice of counsel

---

[3]  The Government notes that it has requested reciprocal discovery in each of its productions to defense beginning on August 4, 2023.  To date, the Government has not received any discovery from the Defendants.

defense or receiving an instruction unless they provide notice and full discovery by March 21, 2025, which is a reasonable time before trial.

In addition, counsel for defendant Blackman has indicated that he may present a general "good faith" defense.  A good faith instruction is distinct from an advice of counsel instruction. In the Eleventh Circuit, the pattern good faith instruction reads: "Good faith is a complete defense to a charge that requires intent to defraud.  A defendant isn't required to prove good faith.  The Government must prove intent to defraud beyond a reasonable doubt.  An honestly held opinion or an honestly formed belief cannot be fraudulent intent – even if the opinion or belief is mistaken.  Similarly, evidence of a mistake in judgment, an error in management, or carelessness can't establish fraudulent intent.  But an honest belief that a business venture would ultimately succeed doesn't constitute good faith if the Defendant intended to deceive others by making representations that the Defendant knew to be false or fraudulent."  Eleventh Circuit Pattern Jury Instructions, Criminal Cases, S17.

It is unclear what the parameters of such a defense would be, or on what evidence it would be based.  The Government notes that based on certain evidence currently available and representations made by counsel, such a defense may be based on the sort of "suspicion or speculation" that is insufficient to support an advice of counsel instruction.  *Romero*, 542 F. App'x at 882 (*citing Condon*, 132 F.3d at 656).  Put another way, it would appear that defendant Blackman is setting up what in practical reality amounts to an advice of counsel defense but without establishing the required factual predicates and without giving the Government an opportunity to investigate the defense.

Where a defendant cannot mount an advice of counsel defense, it is proper to exclude references to the involvement of attorneys in the charged conduct under Federal Rules of

Evidence 401 and 403.  If the defendant "will not be able to prove the required elements of a reliance on advice of counsel defense," "[i]t would be confusing and unduly prejudicial" for the defendant "to present extensive evidence of the presence and involvement of lawyers . . . ." *SEC v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013).  Attorneys "are presumably paid to ensure" compliance "with the relevant legal requirements," and therefore evidence or argument about the presence of lawyers "would likely confuse the jury."  *Id.*  Evidence regarding the involvement of attorneys can create the impression that the attorney "must have implicitly or explicitly 'blessed' the legality of all aspects of a transaction . . . . <u>This misunderstanding would give the defendant all of the essential benefits of an advice of counsel defense without having to bear the burden of providing any of the elements of the defense</u>." *Id.* (precluding "evidence relevant solely to show that lawyers attended meetings or set up meetings") (emphasis added); *see also United States v. Petrie*, 302 F.3d 1280, 1285 (11th Cir. 2002) (excluding attorney testimony where the proffered testimony was not probative of the elements of the good faith defense).  The Court should preclude evidence related to a defense of good faith based on attorney, or such an instruction, absent notice and discovery by March 31, 2025, which is a reasonable time before trial.

## VI.   CERTAIN STATEMENTS SHOULD BE ADMITTED AS CO-CONSPIRATOR STATEMENTS

The Government intends to present evidence of statements made by co-conspirators in furtherance of the fraud alleged here.  As in any fraud case, a key dispute will be Defendants' knowledge and intent.  "[O]ut-of-court statements made by co-conspirators may be offered for the truth of the matter asserted."  *United States v. Estrada*, 969 F.3d 1245, 1275 (11th Cir. 2020) (citing Fed. R. Evid. 801(d)(2)(E)).  "Statements made by an *unindicted* coconspirator are

admissible so long as the government makes the proper showing." *United States v. Montes-Cardenas*, 746 F.2d 771, 779 (11th Cir. 1984) (emphasis added).  Co-conspirator statements are admissible if the Government establishes, by a preponderance of the evidence, that: "a conspiracy existed, the conspiracy included the declarant and the defendant against whom the statement is offered, and the declarant made the statement during the course of and in furtherance of the conspiracy." *Estrada*, 969 F.3d 1245 at 1275-76 (citing *United States v. Christopher*, 923 F.2d 1545, 1549-50 (11th Cir. 1991)).  In meeting this showing, the Court may consider both the co-conspirator's hearsay statement and independent outside evidence.  *United States v. Hemelryck*, 945 F.2d 1493, 1498 (11th Cir. 1991) (citing *Bourjaily v. United States*, 483 U.S. 171, 181 (1987), and *United States v. Chestang*, 849 F.2d 528, 531 (11th Cir. 1988)).  The Eleventh Circuit applies a "liberal standard in determining whether a statement was made in furtherance of a conspiracy."  *Id.* at 1276 (quoting *United States v. Santiago*, 837 F.2d 1545, 1549 (11th Cir. 1988)) (internal quotation marks omitted).  Moreover, to the extent the defendants seeks a hearing to determine the admissibility of coconspirator statements under *United States v. James*, 590 F.2d 575 (5th Cir. 1975), the Government is not required to make such a pretrial showing. *See United States v. Holland*, 117 F4th 1352, 1360 (11th Cir. 2024) ("nothing in *James* contemplates a pretrial hearing to assess whether an out-of-court declarant or a party is guilty of a crime.").

## VII.   USE OF INTERVIEW REPORTS TO IMPEACH

In discovery, the Government provided Defendants with memoranda written by law enforcement agents from interviews conducted during the investigation of this case.  Defendants should not be permitted to impeach any witness with these interview reports without first approaching the bench to establish the impeachment value of the report.  Interview summary

reports such as 302s are not witness statements under the Jencks Act.  Therefore, Defendants should be precluded from using such reports to impeach a witness on cross examination, publishing to the jury, or suggesting to the jury that such summaries are witness statements.  *United States v. Rizza*, No. 2:14-CR-00002-SPC, 2014 WL 3747624, at *1 (M.D. Fla. July 29, 2014) (citing *Palermo v. United States,* 360 U.S. 343, 350, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959) (stating it would be "grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations."); *United States v. Jordan,* 316 F.3d 1215, 1252 (11th Cir.2003) (stating "an interviewer's raw notes, and anything prepared from those notes (such as an FBI 302), are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness.")).  Such a report would have no impeachment value unless it has been adopted by the witness or it reflects a substantially verbatim transcription.  *See*, *e.g.*, *United States v. Miller*, 68 F.3d 465, at *4 (5th Cir. Aug. 23, 1995) ("[A]gent's interview notes are not 'statements' of the witness under § 3500(e) unless the witness 'signed or otherwise adopted or approved the report,' 18 U.S.C. § 3500(e)(1), or the notes were 'substantially verbatim reports' of the witness interview, 18 U.S.C. § 3500(e)(2)." (quoting *United States v. Pierce*, 893 F.2d 669, 675 (5th Cir. 1990) (alteration in original)).

## VIII.   THE GOVERNMENT RESERVES ITS RIGHT TO OPPOSE DEFENSE EXPERTS

The deadline for Defendants to disclose any expert witnesses is February 7, 2025, the date on which this motion is filed. [DE 130 at ¶ 3].  As of January 25, 2025, counsel for Defendants stated that they did not intend to call any experts.  The Government respectfully reserves its right to challenge any defense experts identified after the filing of this motion.

14

**CONCLUSION**

For the reasons stated above, the Government respectfully requests that the Court grant

its Omnibus Motion *in limine* in its entirety.

**Rule 88.9(a) Certification**

The Government has conferred with counsel for Defendants regarding these motions.

Counsel have conferred in a good faith effort to resolve the issues raised in the motions and have

been unable to do so.  Each Defendant's position is as follows:

<u>Blackman</u>:  Opposes all motions *in limine*.

<u>Schreck</u>:   Opposes all motions *in limine*.

<u>Cox</u>: Opposes all motions *in limine*.

Dated: February 7, 2025

          Respectfully submitted,

          HAYDEN P. O'BYRNE
          UNITED STATES ATTORNEY

          GLENN S. LEON, CHIEF
          U.S. DEPARTMENT OF JUSTICE
          CRIMINAL DIVISION, FRAUD SECTION

By:    */s/ Darren Halverson*
          DARREN HALVERSON
          Trial Attorney
          Florida Special Bar No. A5503082
          United States Department of Justice
          Criminal Division, Fraud Section
          1400 New York Avenue, N.W.
          Washington, D.C. 20005
          Tel: (202) 880-2233
          Email: darren.halverson@usdoj.gov

          JENNIFER E. BURNS
          Trial Attorney
          U.S. Department of Justice
          Criminal Division, Fraud Section

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on February 7, 2025, I electronically filed the foregoing

document via the Court's CM/ECF system.

*/s/ Darren Halverson*
Trial Attorney
U.S. Department of Justice
