UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-20271-LEIBOWITZ

UNITED STATES OF AMERICA

v.

GREGORY SCHRECK,

　　　　Defendant.

**UNITED STATES' MOTION FOR
PRELIMINARY ORDER OF FORFEITURE**

Pursuant to 18 U.S.C. § 982(a)(7) and the procedures set forth in 21 U.S.C. § 853 and Rule 32.2 of the Federal Rules of Criminal Procedure, the United States moves for the entry of a Preliminary Order of Forfeiture against Defendant Gregory Schreck (the "Defendant") in the above-captioned matter. The United States seeks a forfeiture money judgment in the amount of $500,000 and the forfeiture of certain property in satisfaction thereof. In support of this motion, the United States provides the following factual and legal bases.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On February 20, 2024, a federal grand jury returned a Superseding Indictment charging the Defendant in Count 1 with conspiracy to commit health care fraud and wire fraud in violation of 18 U.S.C. § 1349, among other counts. Superseding Indictment, ECF No. 76. The Superseding Indictment also contained forfeiture allegations, which alleged that upon conviction of a violation of 18 U.S.C. § 1349, among others, the Defendant shall forfeit any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of

the violation pursuant to 18 U.S.C. § 982(a)(7). *See id.* at 23-24.

On February 20, 2025, the Court accepted the Defendant's guilty plea to Count 1 of the Superseding Indictment. *See* Minute Entry, ECF Nos. 170, 175, 179; Plea Agreement, ECF No. 172. As part of the guilty plea, the Defendant agreed to the entry of a forfeiture money judgment in the amount of $500,000. ECF No. 172 at 10. In support of the guilty plea, the Defendant executed an Agreed Factual Basis for Guilty Plea, and the Court found that there was a factual basis to support the Defendant's conviction. *See* Factual Proffer, ECF No. 171. The Agreed Factual Basis for Guilty Plea also provided a basis for the forfeiture of property. *See id.* at 4.

## II. MEMORANDUM OF LAW

### A. Directly Forfeitable Property

Any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of a federal health care offense is subject to forfeiture. 18 U.S.C. § 982(a)(7). In a health care fraud case, gross proceeds constitute the entire amount received by a defendant as a result of the fraudulent scheme. *See United States v. Hoffman-Vaile*, 568 F.3d 1335, 1344-45 (11th Cir. 2009) (upholding forfeiture money judgment that included not only Medicare reimbursements but also sums paid by private insurance companies and patients because "but for [the defendant's] Medicare fraud, she would not have been entitled to collect these sums from the companies and patients"); *United States v. Saoud*, 595 F. App'x 182, 193 (4th Cir. 2014) ("'[G]ross proceeds' is properly interpreted to include the total amount of money brought in through the fraudulent activity, with no costs deducted or set-offs applied.") (quoting *United States v. Poulin*, 461 F. App'x 272, 288 (4th Cir. 2012)).

If a defendant is convicted of such violation, the Court "shall order" the forfeiture of property as part of the sentence. *See* 18 U.S.C. § 982(a)(7). Criminal forfeiture is governed by the preponderance standard. *See United States v. Hasson*, 333 F.3d 1264, 1277 (11th Cir. 2003). Upon finding that property is subject to forfeiture by a preponderance, the Court:

> . . . must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria. The court must enter the order without regard to any third party's interest in the property. Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c).

Fed. R. Crim. P. 32.2(b)(2)(A).

The Court "must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant," unless entering the order at that time would be "impractical." Fed. R. Crim. P. 32.2(b)(2)(B); *but see McIntosh v. United States*, 601 U.S. 330, 333, 338 (2024) ("district judge's failure to enter a preliminary order prior to sentencing does not deprive a judge of the power to order forfeiture"). And at sentencing, the Court "must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing," and then "include the forfeiture order, directly or by reference, in the judgment." Fed. R. Crim. P. 32.2(b)(4)(B).

### B. Forfeiture Money Judgments

A forfeiture order may be sought as a money judgment. *See* Fed. R. Crim. P. 32.2(b)(1)(A), (2)(A); *see also United States v. Padron*, 527 F.3d 1156, 1162 (11th Cir. 2008) (holding that Federal Rules of Criminal Procedure "explicitly contemplate the entry of money judgments in

3

criminal forfeiture cases"). The forfeiture money judgment is final as to the defendant "[a]t sentencing—or at any time before sentencing if the defendant consents." *See* Fed. R. Crim. P. 32.2(b)(4)(A). No ancillary proceeding is required when forfeiture consists solely of a money judgment. *See* Fed. R. Crim. P. 32.2(c)(1). As additional property is identified to satisfy the forfeiture money judgment, the Court must order the forfeiture of such property. *See* Fed. R. Crim. P. 32.2(e)(1) ("[T]he court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that . . . is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered; or . . . is substitute property . . . ."); *see also* Fed. R. Crim. P. 32.2(b)(2)(C).

The amount of the money judgment should represent the full sum of directly forfeitable property, regardless of the defendant's ability to satisfy the judgment at the time of sentencing. *See United States v. McKay*, 506 F. Supp. 2d 1206, 1211 (S.D. Fla. 2007) (adopting the majority rule); *see also United States v. Blackman*, 746 F.3d 137, 143-44 (4th Cir. 2014) ("The fact that a defendant is indigent or otherwise lacks adequate assets to satisfy a judgment does not operate to frustrate entry of a forfeiture order."). The Court determines the amount of the money judgment "based on evidence already in the record, including any written plea agreement, and any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). The Court in imposing a forfeiture money judgment may rely on an agent's reliable hearsay. *See United States v. Stathakis*, 2008 WL 413782, at *14 n.2 (E.D.N.Y. Feb. 13, 2008). The defendant's money judgment amount can be based on a reasonable estimate on the amount of property subject to forfeiture. *See, e.g., United States v. Roberts*, 660 F.3d 149, 166 (2d Cir. 2011); *United States v. Peithman*, 917 F.3d 635, 651 (8th Cir. 2019); *United*

*States v. Vico*, 2016 WL 233407, at *7 (S.D. Fla. Jan. 20, 2016) (calculation of money judgment does not require mathematical exactitude; district court may make a reasonable extrapolation supported by a preponderance of the evidence).

### C. Difference Between Forfeiture and Restitution

Both forfeiture and restitution are mandatory in criminal cases. *See United States v. Brummer*, 598 F.3d 1248, 1250-51 (11th Cir. 2010) (the word "shall" does not convey discretion and the district court was required to order forfeiture of the property in accordance with Fed. R. Crim. P. 32.2); 18 U.S.C. § 3664(f)(1)(A) (requiring district courts to order restitution in the full amount of each victim's losses). Although sometimes conflated, forfeiture and restitution serve different purposes. "While restitution seeks to make victims whole by reimbursing them for their losses, forfeiture is meant to punish the defendant by transferring his ill-gotten gains to the United States Department of Justice." *United States v. Joseph*, 743 F.3d 1350, 1354 (11th Cir. 2014) (citing *United States v. Browne*, 505 F.3d 1229, 1281 (11th Cir. 2007), *United States v. Venturella*, 585 F.3d 1013, 1019-20 (7th Cir. 2009), and *Libretti v. United States*, 516 U.S. 29, 39 (1995)). Because of this distinction, the Eleventh Circuit has repeatedly held that district courts cannot use restitution to offset the forfeiture amount ordered, or vice versa. *See United States v. Hernandez*, 803 F.3d 1341, 1342-44 (11th Cir. 2015); *Joseph*, 743 F.3d at 1354 ("In light of the statutory framework governing restitution and forfeiture, we hold that a district court generally has no authority to offset a defendant's restitution obligation by the value of forfeited property held by the government, which is consistent with the approach taken by the Fourth, Seventh, Eighth, Ninth, and Tenth Circuits."); *United States v. Bane*, 720 F.3d 818, 827 n.8 (11th Cir. 2013); *United States v. Hoffman-Vaile*, 568 F.3d at 1344-45; *Browne*, 505 F.3d at 1281 (finding defendant's

disgorgement of illicit profits did not divest the United States of its forfeiture interest in the full amount of offense).

### D. Property Subject to Forfeiture in Instant Criminal Case

As set forth in the Agreed Factual Basis for Guilty Plea, ECF No. 171, the Defendant knowingly and willfully conspired and agreed with others, including his co-conspirators, to own operate, and control the company HealthSplash, Inc., which operated the internet-based portal DMERx. *Id.* at 1. As part of this scheme, the Defendant and his co-conspirators operated HealthSplash, and National Center for Pain, LLC. *Id.* The Defendant and his co-conspirators developed a scheme that targeted the Medicare program and other health care benefit programs to obtain millions of dollars in reimbursement for medically unnecessary orthotic braces and prescription creams, among other items. *Id.* The Defendant and his co-conspirators at National Center for Pain and at various telemarketing companies targeted hundreds of thousands of beneficiaries on behalf of orthotic brace suppliers and pharmacies. *Id.*

The Defendant and his co-conspirators and others offered to connect brace suppliers, pharmacies, and telemarketing companies with telemedicine companies that used the DMERx platform and that would accept illegal kickbacks and bribes in exchange for arranging for medical practitioners to order braces, pain creams, and other items for these recruited beneficiaries. *Id.* at 2.

In addition, the Defendant and his co-conspirators and others obtained beneficiary information from the brace suppliers, pharmacies, and telemarketing companies to transfer it to telemedicine companies through the DMERx platform. *Id.* The Defendant and his co-conspirators and others then created false and fraudulent standard form language for doctors' orders on the

DMERx platform that the telemedicine companies were required to use, and which falsely represented that medical practitioners had examined and treated the beneficiaries. *Id.* The Defendant and his co-conspirators and others recruited additional co-conspirators at purported telemedicine companies to pay medical practitioners to sign the false and fraudulent doctors' orders on the DMERx platform—without regard to medical necessity and based on either a brief telephone call, or no telephone call at all, with the beneficiary—and arrange for the doctors' orders to be transferred to brace suppliers, pharmacies, and telemarketing companies that were clients. *Id.*

The Defendant and his co-conspirators and others received payments in exchange for connecting these parties, coordinating these illegal kickback transactions, and referring the completed doctors' orders to the brace suppliers, pharmacies, and telemarketing companies. *Id.* at 3. The orders that the Defendant and his co-conspirators and others caused to be generated through the DMERx platform billed Medicare and other health care benefit programs in an amount in excess of approximately $1 billion for orthotic braces and pain creams that were procured through the payment of kickbacks and bribes, were medically unnecessary, and ineligible for reimbursement. *Id.* Medicare and other health care benefit programs paid brace supplies and pharmacies in excess of approximately $360,000,000 based on false and fraudulent claims submitted as a result of those doctors' orders. *Id.* The Defendant personally benefited from the conspiracy through approximately $500,000 in salary payments and direct payments to his company, RX Efficiencies LLC. *Id.*

Based on the record in this case, the total value of the gross proceeds traceable to Count 1 is $500,000 in U.S. currency, which sum may be sought as a forfeiture money judgment pursuant

7

to Rule 32.2 of the Federal Rules of Criminal Procedure.

Accordingly, pursuant to 18 U.S.C. § 982(a)(7) and Fed. R. Crim. P. 32.2, the Court should issue the attached proposed order, which provides for the entry of a forfeiture money judgment against the Defendant; the forfeiture of specific property; the inclusion of the forfeiture as part of the Defendant's sentence and judgment in this case; and permission to conduct discovery to locate assets ordered forfeited.

## LOCAL RULE 88.9 CERTIFICATION

Pursuant to Local Rule 88.9, I hereby certify that the undersigned counsel has conferred with defense counsel via e-mail on June 12, 2025, and there is no opposition/objection to the relief sought.

Respectfully submitted,

HAYDEN O'BYRNE
UNITED STATES ATTORNEY

By:     *s/ G. Raemy Charest-Turken*
Gabrielle Raemy Charest-Turken
Assistant United States Attorney
Florida Bar No. 15939
99 N.E. 4th Street, 7th Floor
Miami FL, 33132-2111
Telephone: (305) 961-9365
E-mail: Gabrielle.Charest-Turken@usdoj.gov